**Linda S. HALL, Diana L. Luke, Justin M. Paiva, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**AETNA LIFE INSURANCE COMPANY, Defendant.**

**Case No. 3:09cv222/MCR/MD.**

United States District Court, N.D. Florida, Pensacola Division.

Sept. 29, 2010.

Jack Enrique de la Piedra, McKenzie Taylor & Zarzaur PA, Pensacola, FL, for Plaintiffs.

Shari Gerson, Law Offices of Steven M. Ziegler PA, Hollywood, FL, for Defendant.

## ORDER

M. CASEY RODGERS, District Judge.

This action is brought under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"), for breach of fiduciary duty

and declaratory and injunctive relief (doc. 13). On February 16, 2010, the plaintiffs filed a Motion to Certify a Class of Cancer Patients Who Were Denied Radiology Benefits Known as Diagnostic CT and Supporting Memorandum of Law (doc. 82). The defendant, Aetna Life Insurance Company ("Aetna"), responded on April 8, 2010, opposing plaintiffs' motion (doc. 93).[1] Having considered the plaintiffs' motion and the defendant's response, the court finds the plaintiffs lack standing to assert the claims in their Second Amended Complaint ("Complaint") and their motion thus should be denied.

## BACKGROUND

The named plaintiffs, all of whom claim to be Aetna insureds, were diagnosed with cancer and underwent fusion PET/CT scans at Angel Williams Imaging Center ("AWIC") in Pensacola, Florida, for additional diagnostic purposes. According to the Complaint, a fusion PET/CT scan is performed by a single machine that combines images obtained through positron emission tomography ("PET"), which depicts the body's metabolic or chemical activity, and computed tomography ("CT"), which depicts the body's anatomical structures, allowing the interpreting physician to detect "metabolic changes in the proper anatomical context of the patient's body." *See* doc. 23 at ¶¶ 33, 34, 36. Dr. Angel Williamson, a radiologist at AWIC, ex-

plained in her deposition that, although fusion PET/CT consists of one scan, it produces three different images—one through PET, one through CT, and one that is a combination or overlap of the two.[2] The plaintiffs urge that fusion PET/CT is the most effective tool to distinguish benign from malignant disease, determine the extent of disease, detect residual and recurrent tumors, and monitor therapy, providing increased accuracy over the former approach of performing PET and CT scans separately and subjecting patients to less radiation. *See* doc. 23 at ¶¶ 6, 8. The plaintiffs also contend that the CT portion of the scan must be interpreted separately from the fused PET/CT to avoid false interpretations and thus incorrect diagnoses. *See* doc. 23 at ¶ 49. Although Aetna did not deny coverage for any of the named plaintiffs' PET/CT scans, it refused to reimburse AWIC separately for the CT scan, finding that it was incidental to the fusion PET/CT scan. The plaintiffs claim that Aetna's refusal in that regard constituted a breach of fiduciary duty. Even though none of the named plaintiffs paid out-of-pocket for any portion of the fusion PET/CT scan, they seek to recover the amount billed by AWIC for the CT scan under 29 U.S.C. § 1132(a)(1)(B).[3] They also seek declaratory and injunctive relief under 29 U.S.C. § 1132(a)(3)[4] and to certify the following

---

1. On July 23, 2010, the court entered an order (doc. 120) requiring the plaintiffs to submit a reply setting forth their response to certain arguments the defendant made in opposition to their motion. The plaintiffs filed their reply (doc. 124) on August 9, 2010; because it contained new evidence, however, the court granted (doc. 134) Aetna's motion to strike it from the record (doc. 127).

2. Dr. Williamson testified in her deposition that she reads the three images separately. Although she also testified that she has no knowledge of AWIC's billing practices, the record reflects that when a fusion PET/CT

scan is performed, AWIC bills for both a PET/CT scan and a CT scan. Accordingly, in connection with the PET/CT scans performed on the named plaintiffs, AWIC billed Aetna for both PET/CT scans and CT scans.

3. A participant or beneficiary in an ERISA plan may bring suit under § 1132(a)(1)(B) "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

4. Under § 1132(a)(3), an ERISA participant or beneficiary may sue "to enjoin any act or

class action:

> All individuals insured under an ERISA-governed health insurance policy with Aetna Life Insurance Company who (from as far back as the applicable statute of limitations permits) received denials of provider-requested diagnostic CT (CPT codes 71250, 74150, 70450, 70490, 72192) when fusion PET/CT (CPT codes 78815, 78816) was concomitantly requested and approved.[5]

In response to plaintiff's motion to certify, Aetna asserts, among other things, that the named plaintiffs do not fit within the proposed class and, even if they did, they lack standing to bring the causes of action alleged in their Complaint. The court agrees.

## DISCUSSION

It is well-settled in the Eleventh Circuit that " 'any analysis of class certification must begin with the issue of standing.' " *Prado–Steiman v. Bush*, 221 F.3d 1266, 1280 (11th Cir.2000) (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987)). Indeed, "[f]ederal courts ... have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). As a result, "prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Bush*, 221 F.3d at 1279. " 'Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others.' " *Id.* (quoting *Griffin*, 823 F.2d at 1482). "At an 'irreducible constitutional minimum' Article III standing requires that the plaintiff 'must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.' " *Connecticut v. Health Net, Inc.*, 383 F.3d 1258, 1261 (11th Cir.2004) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).[6] In other words, in evaluating a plaintiff's standing, the court must determine whether he has " 'alleged 'such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.' " *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). "Generally, a plaintiff 'must assert his own legal rights and interests, and cannot rest his claim to

practice which violates any provision of this subchapter or the terms of the plan, or ... to obtain other appropriate equitable relief (i) to redress such violations or (ii) enforce any provisions of this subchapter or the terms of the plan." In their Complaint, the plaintiffs request that the court enjoin Aetna "from committing these financially-motivated acts in the future and/or declar[e] their invalidity...." *See* doc. 23 at ¶ 101.

5. The description of denied benefits is broader in the plaintiffs' Complaint and includes, in addition to diagnostic CT scans performed in

conjunction with PET/CT scans, fusion PET/CT scans, administration of a radioactive pharmaceutical in connection with PET/CT scans, and office consultation with the interpreting physician. (*See* doc. 23 at ¶ 91). The court need only address the benefit included in the proposed class definition—*i.e.*, diagnostic CT scans.

6. According to *Lujan*, to establish that an injury is particularized, the plaintiff must establish that it effected him in a personal and individual way. *Lujan*, 504 U.S. at 561 fn. 1, 112 S.Ct. 2130.

relief on the legal rights or interests of third parties.' " *Id.* (quoting *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Bringing suit in the form of a class action does not abrogate the individualized standing requirement. *See Bowen v. First Family Fin. Servs., Inc.,* 233 F.3d 1331, 1339 fn. 6 (11th Cir. 2000). "Without a plaintiff's satisfaction and demonstration of the requirements of Article III standing, a federal court has no subject matter jurisdiction to hear the merits of a plaintiff's—or, in this case, the class plaintiffs'—claim." *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck–Medco Managed Care, L.L.C.,* 433 F.3d 181, 198 (2d Cir.2005). And when the court lacks jurisdiction, its only function is to announce that fact and dismiss the case. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

■ The plaintiffs' motion for class certification is woefully inadequate for a number of reasons, only two of which need to be addressed here. First, as Aetna observes, none of the named plaintiffs fit the definition of the proposed class. Indeed, none of the named plaintiffs were Aetna insureds when they received the fusion PET/CT scan from AWIC; instead, each of the named plaintiffs was insured under a separate employer-sponsored health benefit plan *administered* by Aetna.[7] And none of the named plaintiffs were refused a CT scan; rather, as set forth in the Complaint, each of the named plaintiffs received a fusion PET/CT scan which included a separately interpreted diagnostic CT scan. Because none of the named plaintiffs fit the definition of the proposed class, the plaintiffs' motion for class certification must be denied. *See Sosna v. Iowa,* 419 U.S. 393, 402, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (holding that, in order to satisfy Article III's standing requirement, there must be a named plaintiff who has a case or controversy at the time the class action complaint is filed and at the time the class action is certified); *Cooper v. Southern Co.,* 390 F.3d 695, 714 (11th Cir.2004), *overruled on other grounds, Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 457, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006) (holding that "the named plaintiffs' claims must ... share the same essential characteristics as the claims of the class at large") (internal quotations omitted).

Even if the named plaintiffs were members of the proposed class, their motion for class certification must nevertheless be denied because none of the named plaintiffs suffered any injury as a result of the acts alleged in their Complaint. Not only did each of the named plaintiffs receive a provider-requested diagnostic CT scan in conjunction with a fusion PET/CT scan, but none of them were required to pay for the separately billed CT scan. In fact, under the Facility Agreement ("Agreement") between Aetna and AWIC,[8] AWIC is precluded from billing the named plaintiffs for the CT scan.[9] Although AWIC sent each of the named plaintiffs a bill after Aetna

---

**7.** Aetna is a life insurance company that offers a variety of insurance plans and services, including administration of employer-sponsored health benefit plans.

**8.** Pursuant to the Agreement, which became effective on August 22, 2002, AWIC is to provide services to plan members at agreed upon compensation rates. *See* doc. 93–3. With respect to covered services, AWIC may bill members only for copayments, co-insurance, and deductibles, but not for the cost of the service. There is one exception to that rule in the event the Payor becomes insolvent or otherwise fails to pay, but that exception is not applicable to the plaintiffs' claims.

**9.** Aetna reminded AWIC that it could not bill the named plaintiffs in Explanations of Benefits ("EOBs") it sent AWIC in connection with the services at issue, stating "Do not bill the member." Aetna also sent each of the plaintiffs an EOB advising that they were not responsible for payment of any unreimbursed amounts in connection with the fusion PET/CT scan they received from AWIC.

refused to reimburse it for the CT scan, it never collected payment from any of them, and it is clear from their depositions that none of the named plaintiffs consider themselves financially responsible for the CT scan. Having received the diagnostic CT scan and having no financial responsibility for it, the named plaintiffs have not been injured by Aetna's alleged actions and thus lack standing to assert the breach of fiduciary duty claim alleged in their Complaint.[10] *See Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1222 (11th Cir.2008) (noting that "ERISA allows the recovery of benefits, but it does not allow suits for extracontractual damages"); *see also Weaver v. Aetna Life Ins. Co.*, 370 Fed. Appx. 822, 823 (9th Cir.2010) (concluding that the plaintiff suffered no injury-in-fact, as required to support standing, where she failed to show that she did not receive the benefit of her policy) (unpublished op.);[11] *Romberio v. Unumprovident Corp.*, 385 Fed.Appx. 423, 429 (6th Cir.2009) (unpublished op.) (holding that, "[t]o prevail on a breach-of-fiduciary-duty claim under ERISA, a plaintiff must generally prove that the defendant not only breached its fiduciary duty but also caused harm by that breach"); *Nahigian v. Leonard*, 233 F.Supp.2d 151, 168 (D.Mass.2002) (finding that, "[b]ecause ERISA is concerned primarily with ensuring that employees receive benefits due to them, an employee usually cannot recover under ERISA—

even if there has been a breach of fiduciary duty—unless the breach caused some reduction in her benefits"); *Allstate Indem. Co. v. Forth*, 204 S.W.3d 795, 796 (Tex.2006) (finding that the plaintiff, who sued her former insurance company for settling her medical bills in an arbitrary and unreasonable manner, suffered no injury and therefore lacked standing to bring a breach of contract claim against her former insurer where she was not denied medical treatment and had no unreimbursed, out-of-pocket medical expenses).

■ In addition to having no standing to assert the breach of fiduciary duty claim alleged in their Complaint, the plaintiffs lack standing to assert a claim under § 1132(a)(3) for declaratory and injunctive relief. As the Eleventh Circuit has noted, "[a] plaintiff has standing to seek declaratory or injunctive relief only when he 'allege[s] facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" *Bowen*, 233 F.3d at 1340 (quoting *Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342, 1346–47 (11th Cir.1999)). "Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute an injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990).[12] The purpose of the

---

**10.** To the extent that anyone has been injured by Aetna's failure to pay for the separately billed CT can, it appears to be AWIC. Indeed, it is clear that the real controversy here stems from billing issues between AWIC and Aetna and that AWIC is the only proper party to assert the causes of action alleged in the plaintiffs' complaint. In fact, the record reflects that AWIC sued Aetna to recover amounts not reimbursed for CT scans obtained through fusion PET/CT and that AWIC settled its lawsuit against Aetna but specifically excluded from the settlement claims submitted on behalf of the named plaintiffs.

**11.** While unpublished opinions are not considered binding, they may be considered as persuasive authority. *See* 11th Cir. R. 36–2; *see also United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir.2000).

**12.** The court recognizes that some circuits, including the Second and Third Circuits, have held that plaintiffs need not demonstrate actual harm to have standing to seek injunctive relief under ERISA pertaining to the disclosure and fiduciary responsibilities imposed on plan administrators. *See, e.g., Central States*, 433 F.3d at 199 (2d Cir.2005); *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450,

"injury-in-fact" requirement is to "reserv[e] limited judicial resources for individuals who face immediate, tangible harm absent the grant of declaratory or injunctive relief." *Bowen*, 233 F.3d at 1340. The named plaintiffs—and putative class members, for that matter—plainly do not fit in that category. Indeed, in their Complaint, the plaintiffs allege only that Aetna's failure to reimburse for a separately billed CT scan "is an ongoing problem that will continue to cause the Named Plaintiffs and members of the class injury and/or economic loss." *See* doc. 23 at ¶¶ 74, 100.

They do not allege any impending future need for such services and, as discussed above, even if they did, they have not demonstrated any action by Aetna that could result in injury or economic loss to them. The court thus finds that the plaintiffs' motion for class certification should be denied and that their Complaint should be dismissed.[13] *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir.2009) (noting that, "[f]or a district court to certify a class action, the named plaintiffs must have standing") (internal quotations omitted).[14]

---

456 (3d Cir.2003). In both *Central States* and *Horvath*, however, the plaintiffs' claims for injunctive relief were brought on behalf of plans and pertained to ERISA's statutory disclosure and reporting requirements, as well as allegations of self-dealing in *Central States*, rather than to benefits decisions, as in this case, which affect only certain individuals and not the plans in general. In fact, Aetna's refusal to reimburse AWIC separately for the CT scan not only resulted in no harm to the named plaintiffs, but it inured to the benefit of the plans. Moreover, the Eighth Circuit has held that a direct injury must be established even when bringing a claim for injunctive relief on behalf of a plan. *See Harley v. Minn. Mining and Mfg. Co.*, 284 F.3d 901, 906–907 (8th Cir.2002), *cert. denied*, 537 U.S. 1106, 123 S.Ct. 872, 154 L.Ed.2d 775 (2003).

13. Because the named plaintiffs have no standing to assert the causes of action alleged in their Complaint, the court has no jurisdiction over the matter and must dismiss their Complaint. *See Jenkins v. Lennar Corp.*, 216 Fed.Appx. 920, 921 (11th Cir.2007) (noting that, "when the district court lacks subject-matter jurisdiction, it should dismiss the complaint '*sua sponte* if necessary, pursuant to Fed.R.Civ.P. 12(h)(3)' instead of [deciding] the merits") (unpublished op.); *see also Steel Co.*, 523 U.S. at 94, 118 S.Ct. 1003, and *Central States*, 433 F.3d at 198.

14. Having found the named plaintiffs lack standing to assert the causes of action alleged in their Complaint, the court need not address the requirements of Fed.R.Civ.P. 23(a) for class certification. The court would note, however, that the named plaintiffs failed to satisfy the element of numerosity. In their

Complaint, the plaintiffs acknowledge that they do not have an exact number of potential class members, but suggest that the number is in the thousands. *See* doc. 23 at ¶ 78. In addressing numerosity in their motion, the plaintiffs rely on 15 spreadsheets produced by Aetna, which they contend contain denials of radiology benefits from 2006 forward, including diagnostic CT scans, and demonstrate that the number of potential class members is "almost certainly in the hundreds, if not thousands...." As both parties acknowledge, "'although mere allegations of numerosity are insufficient, to meet the [numerosity] prerequisite [for class certification], a plaintiff need not show the precise number of members in the class.'" *Vega*, 564 F.3d at 1267 (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir.1983)). The plaintiffs, however, must make "some showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." *Id.* The plaintiffs have failed to make such a showing. Indeed, as Aetna points out in its response to the plaintiffs' motion, the spreadsheets it produced contain *all* claims administered by Aetna or a related company for diagnostic CT scans requested concomitantly with approved fusion PET/CT scans and do not segregate denied claims, ERISA claims, or claims of Aetna insureds. Moreover, the named plaintiffs have made no effort to segregate the claims in a manner that would allow the court to discern the approximate number of putative class members. Any inference of numerosity under the circumstances would constitute sheer—and impermissible—speculation by the court. *See id.*

Accordingly, it is hereby ORDERED that plaintiffs' motion for class certification (doc. 82) is DENIED and their Complaint (doc. 13) is DISMISSED with prejudice. The Clerk of Court is directed to enter judgment in favor of Aetna consistent with this order and to tax costs against the plaintiffs.